Good morning, Your Honors. My name is Stephanie Ayers with the firm of T.M. Geyer and Ayers and Friends, and may it please the Court, I'd also like to introduce Ms. Leslie Kerr, the appellant and the former manager of the Kodiak National Wildlife Refuge in Kodiak, Alaska, the first female manager of that refuge, and the second female refuge manager in the whole state of Alaska. I've had the honor of representing her now for five years, as we got dismissed on summary judgment by Judge Weisslein. Your Honors, a female manager should never be told, this is going to sound sexist as hell, but could you learn to be more feminine? That is direct evidence of pretext, and that is exactly what Ms. Kerr was told in a July 8, 2005 meeting by her manager, Mr. Mike Boylan. Mr. Ayers, can you help me, on deposition, when your client was asked what she understood being more feminine to mean, her answer sounded pretty innocuous to me, that he wanted her to be more compassionate, and I forget what the rest of her answer was. Sure, Your Honor. Well, a couple things, Ms. Kerr actually summarized what her response was, and at first, and this is at ER, I'll find the citation later, but she said, you know, I've changed my management style a number of times in a number of ways and I don't know what you mean, and they were in the context of a performance discussion in which they had gotten a report back, a May 18, 2005 report that said she was aggressive at times and she could be, you know, a top-down type manager style, so clearly it was in response to that. Being more, the problem with someone saying be more feminine to a female manager is, in fact, I'm now locked into your idea of what femininity is. I don't know that, and that can certainly include negative characteristics, such as be less aggressive with your staff, be less top-down when other male managers were not treated similarly or told to be more feminine or told to be more masculine. There's no evidence in the record that Mr. which has to do with retaliation and another which has to do with, if you will, whistleblowing. So put, I mean, I appreciate what you had to say with that, and it sounds good to a jury, but to this judge, you've got to put that in perspective. I mean, retaliation. So they had a dispute between them. What, I guess I'm trying to figure out, where is it that I find a case that would suggest that that in itself is a protected activity? Well, it's not a, it wasn't a dispute simply between them. It started in July 2005 where Ms. kind of objects to this characterization of being more feminine, and she points out at the time that there's this massive alcohol problem at the refuge. Now, staff coming to the refuge drunk, staff driving cars around drunk, staff getting into accidents and pretending to be law enforcement officials and getting, trying to get out of trouble for that. So reporting that is, she's reporting that as a systematic problem with the refuge. It's not just a personality dispute between her and Mr. Boylan, but rather her saying, we've got a systemic problem out here at Kodiak, and I need your support in resolving this. Informal complaints of EEO discrimination are covered, and complaints to your supervisor chain. Judges asked for a briefing on the Whistleblower Protection Enhancement Act. Those, it's clear that Congress has said that applies to pending cases, and it's clear that reporting up your channels, issues like alcohol abuse, mismanagement, violation of law, rule, or regulation, such as employees showing up drunk to work, are clearly covered. And that starts in July of 2005 and carries out through January of 2006. Well, I guess I'm, I'm focusing in on, there is some things that are protected activity, and then there's others that are not. It doesn't, I'm trying to find the case that would suggest that going to your boss with problems and talking to him is somehow a protected activity for which somebody can be retaliated against. Your Honor, the statutory language itself is clear in the Whistleblower Protection Act. It's any disclosure to any individual. Well, frankly, if I look at the Whistleblower Act, and I don't have the new enactments from the WPA Whistleblower Protection, and I look at Horton, I think that that isn't any problem at all. Well, I mean, the amendments are there. Well, I understand what the amendments are, but I guess you've got to convince me that they were supposed to be applied retroactively. Well, they were the law at the time. The Congress has amended this four times, specifically overruling cases that the Federal Circuit puts down that eliminates and makes loopholes that were never intended to be there by Congress. Well, that's your best argument, and put in your best vernacular, but the problem is that I've got to find whether it really is that or whether it isn't. What is your best case for me suggesting that this is not a direct amendment? Sorry, Your Honor. I mean, I look at what's happening here. It seems to me that Congress, while they are certainly the ones who I should give all deference to, they better put in the law what it is. And then if I reinterpret it based on what they've got in the statute, and then it comes and they don't like it, then they go amend it, and then I've got a new statute to look at. And I guess I'm trying to figure out why isn't that exactly what happened here? Well, it's not a new statute. It's the same statute. Well, it's a new statute with all kinds of amendments, which were not the same they had before, or they wouldn't have had to amend it. They have to amend it because the Court continues to make cases that create loopholes that are not in the statutory language. The statutory language has always been broad. What's your best case for telling me whether it's truly an amendment or whether it's just a clarification? What's the one I ought to really follow on that? The best case that's decided yet, whether this is the WPEA amendment. An amendment where there's a new statute with new rights, new ideas, or whether it's just a clarification of what we had. What's your best case for me to look at? We're at that stage. We're making those cases now. There's no case otherwise? This is new precedent for me to make this decision? This is the first time the Ninth Circuit has, that anybody has ruled on the WPEA so far. Well, you got any place else in the country that suggests how I ought to look at that? How the Ninth Circuit should look at it? Yeah. No, I'm not aware of any other case having yet been decided on this issue as to whether the WPEA is retroactive. Well, help me on the retroactivity argument. I read the Senate report, which seems pretty persuasive, except that the statute itself has a delay in the effective date. And when Congress intends something to be retroactive, it doesn't usually delay the effective date of the enactment. Except for it says it applies to all pending actions. But again, why does it – no, I understand what the Senate says, but I'm looking at the language of the statute. And the statute says this change doesn't go into effect for 30 days. Well, I mean, those 30 days have long since passed, so I understand. But your argument is that at least between, I guess, the date that Congress passed or the President signed the bill, and 30 days later, then they wouldn't have been retroactive. Otherwise, that provision in the statute has no meaning at all. Sally, that's not my problem or the case here. You know, with all due respect, we're here after the 30 days. It's in effect. Counsel, you're not answering my question. What's the purpose of that provision if it's fully retroactive and applies to all cases before, during, and after the enactment? And they didn't use that language, which is what we usually see in a statute that is intended to have retroactive effects. If I had to guess, I would assume it was some compromise between the parties. So there was a window of at least 30 days in which the statute would not have been retroactive. Is that what you're saying? I don't know. Maybe there was, like, some hot-button case that – so they didn't – Well, if that's the case, what would we do with cases that have been filed prior to day one of the 30 days? I don't know. And isn't that this case? No, it's – the effective date applies to all pending cases. Now, it doesn't say cases that were – have, you know, were filed by a certain date. But if you agree with me that on day 15 it wouldn't have been retroactive because the statute wasn't in effect. And I'm not sure I agree with you on that. All right. But I just don't understand why Congress would put that in if you're right, that it was simply a clarification and it applied to everything. You know, I – Either filed before, during the 30-day window, or afterwards. I don't know why they put in the 30-day effective date. I know that my colleagues worked on the statutory language. I can go ask them specifically and say, you know, what's with the 30 days? I've been asked about it repeatedly. But you want us to write an opinion. I'm asking you to help me figure out what we're going to say in the opinion. Because the first place we have to look is the actual language that Congress used, not what some Senate committee said in a committee report. Yeah, I mean, we also have amicus briefs on this from the agency that administers the statute itself. But that doesn't help me with congressional intent. I mean, I've got to look at the language of the statute. That's step one, is it? Yeah. Well, you look at the Supreme Court precedent, Bradley, that says you apply the law in effect at the time you render your decision. Well, the Supreme Court tells me there's a presumption that the statute is not retroactive unless I can find clear evidence of congressional intent to make it so. No, it's the opposite. There is a statutory direction or legislative history to the contrary that you apply the law that's in effect at the time. Well, if the statute is otherwise silent. Again, I don't know what to do with the statutory language. I mean, I guess maybe you and I are just where we are on this issue. No, I'm trying to help you the best I can. Okay, all right. My understanding of the law is that unless there's a manifest injustice or statutory instruction to the contrary to not apply it, then it has to be applied. Well, let's move then back to retaliation. Okay. What's your best case to suggest that going to see your boss can be at all a situation in which it is enough that it can be retaliated, it can be a claim for retaliation? It's not just seeing your boss. She escalated and filed formal complaints. Well, now, just a minute. The first thing that she talks about is the July 2005 meeting between her and her boss, right? That's the first thing she talks about. All right, then she goes next to the formal grievance to the personnel office. Okay, what is the best case you have that a formal grievance to the personnel office is something for which you can make a retaliation claim? Well, it's protected under EEO as well. Just a minute. Where? What's the case? All right. Protected. I mean, the government argues, and all I'm trying to do is get you to help me. The government argues the only way you can ever do this on a retaliation claim is to go over to the EEOC, that the only way you can do that is to go to something Congress put together. Well, it doesn't matter because neither one of them got us our jury trial. I mean, we just got thrown out on the one element. Well, if you don't go to the right place to get you through, that's the question. That's what they're arguing. I'm just trying to let you respond. I'm not trying to be against you. I'm just trying to say the protected activity. Government says meeting with your boss is not enough. Government says formal grievance with the personnel officer is not enough. And the OIG complaint happened after being terminated. So I can't deal with that. Well, yeah, she wasn't terminated. That happened while she had not yet been terminated. She made an OIG in March of 2006. She wasn't terminated until June of 2006. But the case in the Ninth Circuit in terms of it doesn't have to be made to a specific avenue or venue in terms of the EEO complaints, an informal complaint to the supervisor's protected activity. What's your best case? That's Equal Employment Opportunity Commission v. Hacienda Hotel. Well, now, Hacienda Hotel, I read that very carefully. That wasn't to their boss. That was to the boss's boss. I have it as an informal complaint to a supervisor. Well, I understand because you just looked at the head notes like my law clerks do. But the bottom line is I'm looking at the facts. We're not just going to go to the boss. If you read the facts of the case, it wasn't the boss at all. It was the boss's boss. Where? Where is there in your stuff that suggests that that is on which you have protected activity? It's in ER 1567-2205. She called Logan specifically with her complaints about sexism and objected to the administrative inquiry that had been conducted into her. That's in our, yes, excerpt to the record 156 as her protected activity. Was it 156 and 2205? It was 720205. 720205. And also we have evidence that Mr. Boylan and Mr. Logan talked about these issues all the time. And that's my amount of time, and so I'll give you some time on rebuttal. Let's hear from the government. Thank you. Thank you, Ms. Ayers. Good morning, Your Honors. Good to see you again. Daniel Lenners. I have a sense of deja vu here, Mr. Lenners. A little bit. Okay. I'll start with a retroactivity point. As Your Honor pointed out, congressional intent that a statute be retroactive have to be so clear that it could sustain only one interpretation. That's clearly not the case here where you have Congress instituting an effective date in the statute 30 days after the statute was enacted and accepting from that effective date one particular provision. So Congress clearly knows how to make a statute effective retroactively as it did with the Lilly Ledbetter Act, and it clearly knew how to make this statute effective on different dates, and it chose to make the provisions at issue here effective 30 days after the statute was enacted, which is not the kind of clear congressional intent one needs to find the statute retroactive. Additionally, I don't think one needs to turn to legislative history, but the legislative history on this issue is conflicting. The Senate report suggested that the Senate intended these provisions to apply retroactively. The House report on the previous year's bill, which included the same exact language, suggested a different intent. You agree, Mr. Lenners, that we don't even have to reach the question of retroactivity if we conclude that the Federal Circuit is wrong and we don't want to follow their interpretation of the old law? I think the Court need not reach the retroactivity issue because it's clear that these personnel actions were not taken against Ms. Kerr because of any whistleblowing activity. So the Court need not even decide whether her July 2005 conversation was true. What I'm getting at is whether that's true or not. I may agree with you on that. I may not. But the question is, we don't have to follow Horton and Huffman, do we? This Court is not bound by Horton and Huffman. It would be unusual for the Court to say that the statute's not retroactive, but because of the congressional intent from 2013, we're going to newly interpret the old act to apply differently to events that took place in 2006. Well, isn't the new act strong evidence of what Congress always meant? Congress says that's what it always meant, but as the Court has pointed out, Congress made significant changes to Federal Circuit precedent, some of which had been in place for more than 15 years, for very old precedent. The parties have both relied on Federal Circuit precedent as governing in this case. No one has suggested that the Ninth Circuit should not follow the Federal Circuit. Rather, the parties have disagreed as to the meaning of that precedent. But I guess my question is similar to my good colleague's. If I don't agree with what the Federal Circuit's done, the Ninth Circuit hasn't told me what I need to do, and I can just go off on wherever I want and think that what Congress is doing now was very good and come out that way. I don't have any precedent suggesting I've got to follow the Federal Circuit. There is no precedent requiring you to follow the Federal Circuit. However, none of the parties, the plaintiffs have not suggested that this Court not follow the Federal Circuit. The plaintiffs have suggested that the Court follow the Federal Circuit, only they've characterized the holdings of the Federal Circuit differently than I think they actually are. Regardless, it's clear from the- I thought their argument was that if the change is retroactive, it was intended to overrule Horton and Huffman. Isn't that their argument? My understanding of the questions I received is even if the Court agrees that the statute wasn't retroactive, it could still interpret the old act from the early 90s in a way that's consistent with the 2012 legislative change. And the plaintiffs have never argued that this Court shouldn't follow the Federal Circuit precedent, that at the time the conduct took place here in 2006, much of which had been in place for 10 years or more. Everyone agrees that the Federal Circuit generally handles the vast majority of these cases, and that is it speaks with great authority as to the meaning of the Whistleblower Protection Act. Regardless, if I could briefly go through the timeline of events, it's clear that the actions that were taken against Ms. Kirk, which were to detail her to a different position as Chief of Conservation Policy and Planning in early January 2006, and ultimately to make that detail permanent in March of 2006, were not taken either as retaliation for what she says are whistleblower complaints or as retaliation for what she says were Title VII participation and Title VII processes. Well, my worry about that is this. You'd agree with me, wouldn't you, that if, in fact, we have a protected activity by what happened from February to March, that the government had told her that she was going to be reappointed on a temporary basis, correct? She was detailed in late January of 2006, Your Honor, yes. Okay, to a temporary decision, or a temporary appointment. Then, after that, in March, she was made permanent there. Now, when they said why she was given a temporary appointment, they said it was because she had such expertise and to diffuse the situation at Kodiak. What's the good reason why this should then be permanent? So, that's explained in numerous places in the record. Why is that not a change? Why is not that issue itself an issue of fact? It seems to me that we're really talking now about pretext. We're saying, okay, she's outlined what she thought. The government come back with their reason. And now, what we're really arguing, she's put at a certain place on a temporary basis. They say she has such expertise and she's diffused the situation. And then, not even long enough, they say this is permanent. And she's saying there's a question of fact as to why that is, and that's pretext. None of the evidence, Your Honor, that Ms. Carr has pointed to show that the decision to make this detail a permanent reassignment was pretext. There is an excerpt. Well, there's no good reason why it's over pretext. It goes from temporary to permanent except pretext. That's what I'm trying to get there, Your Honor. In excerpts of Record 73, there are notes from Mr. Boylan and Mr. Logan's discussion with Human Resources about the temporary detail. And one of the reasons they discuss about the purposes of those details was to see if the problem at Kodiak was due to Ms. Carr or it was due to subordinates that were not able to be appropriately managed by anyone. They temporarily detailed Ms. Carr to this new chief position beginning of February 2006, and she proved to be extremely adept. As Mr. Logan explained in his letter, which is excerpts of Record 41 to 42. That's the best evidence you've got for your side. But if I take the evidence now that we've got on the other side, she sends a letter to Human Resources and the Performance Review Board, and she requests reconsideration of her January performance evaluation. She says the gender bias of reviewing official impacted the rating. She recites the comments. She talks about the Playboy magazine. She says there was generous treatment afforded of the other manager, and she talks about alcohol. Then she files a formal grievance with FWS's personnel office, the office of the agency, protesting the letter of warning and talking about the alcohol problem. Now, she's saying that is my protected activity, which I'm going to throw in the face of what you're saying in all those notes, and that is 10 days from the time when she's reassigned. So the mere proximity of that event to that under our case law says that's a question of fact. Your Honor, the district court looked at the proximity and relied on it to find that Ms. Carr had made out a prima facie case. However, it found that it was uncontroverted, that the problems that existed at Kodiak National Wildlife Refuge, it was uncontroverted that they needed someone in this policy and planning position and that Ms. Carr was well qualified. Frankly, the district court says what's uncontroverted and what isn't, but I'm trying to say is there a question of fact. And I know that there was a letter sent to Human Resources, there was a letter sent to the Performance Review Board, and there was a formal grievance sent to the FWS's personnel office during that period of time, not more than 10 days before she was permanently assigned, and it seems to me there's a question of fact. There's nothing about those letters that undermine the gender-neutral explanation for Ms. Carr's reassignment, which was that she had not been a good manager of Kodiak. In fact, she was criticized in an administrative inquiry as a ruler who exercises absolute power oppressively or brutally. She was criticized for having serious management failures. All of the folks at Kodiak, when Mr. Boylan went there in December 2005 for the funeral of the Kodiak employee who had killed himself, complained about Ms. Carr's management. All of these things were well established by the time that they decided to detail Ms. Carr to see what the problem was, to see if she was the problem or if the problem lay with the folks at Kodiak. A month later, she had proven very adept at this position. A new employee had been detailed in her place, and Mr. Logan determined that because she was so well qualified, because she was doing such a good job, and because Kodiak would benefit from new leadership, that a permanent reassignment was appropriate. Mr. Boylan also testified in his deposition, that's at the Supplemental Excerpts of Record of 17, about all the conservation plans that Ms. Carr was able to complete in her short time in this new chief position. So it's uncontroverted that she was not a good manager of Kodiak, that the agency needed to make a change for the good of Kodiak. They couldn't have its hands tied and be stuck with her as manager because she raised complaints about her treatment, and that she was also extremely well qualified and very successful in this new chief position to which she had been detailed and ultimately was made permanent. Do you agree with the complainant that the complaints to her supervisor are protected activity under Title VII? So I want to make sure I understand the question. Under Title VII, we made an argument. We're talking about the retaliation claim. Do you agree that a complaint to a supervisor is a protected activity for which you can be retaliated against? Yes, Your Honor. There was an argument we made in our brief that that wasn't a good argument. And that was that certain of her February complaints were not protected activity under Title VII. And we withdraw that argument. So for our purposes then, at least as to the retaliation complaint under Title VII, just the complaint to Boylan and the complaint to ñ and we just went through these complaints in January, February, from the time she was reassigned are protected activity. That's correct, Your Honor. She has several letters that she sent in February to several different people, and we don't dispute that in those letters she either appears to have imposed an unlawful employment practice or participated in an investigation. If the Court has no further questions. Nothing more. Thank you. Ms. Ayers, I'll give you a minute on rebuttal here. Okay. On rebuttal, to answer your point about Horton, the disclosures being excluded if they went to the wrongdoer, that wouldn't apply here because on 2-20-2006 she went to HR and the PRB, and obviously the agency has conceded those were protected disclosures. Well, 2006 ñ And as to your point, it's exactly right. She was sent on a temporary detail. The only thing that changed in between the announcement of that temporary detail on 1-26-06 and the March making it permanent were these protected disclosures that occurred in February of 2006. There was no further investigation done into her in that February time period. Mr. Boylan had already talked to the staff out there back in December and January. Nothing changed in February other than she started raising her concerns up the chain of command, and then in March they decided to make this a permanent position. And they say Mr. Logan had just determined that Kodiak would benefit from new leadership. Why, how, when, with what information? They didn't put any of that into the record as to why he decided Mr. Wheeler, a man, was better to replace Ms. Kerr at the end. Thank you, Your Honor. Thank you both very much. The case just argued is submitted, and we are adjourned. All rise for the hearing. All persons having a business with the Honorable, the United States Court of Appeals, for the Ninth Circuit will now depart. The court for this session now stands adjourned.
judges: Tashima, Tallman, Smith